UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GREGORY GATEWOOD                                                                                    PLAINTIFF

v.                                                                            CIVIL ACTION NO. 3:09-CV-00299-S

KATIE GRAHAM-MATHENEY, et al.                                                                DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court on motions for summary judgment by defendants Katie Graham-Matheney (DN 40) and Michael O'Neil and Louisville-Jefferson County Metro Government (DN 39). For the reasons set forth herein, the defendants' motions will be **GRANTED** in part and **DENIED** in part.

BACKGROUND

On April 27, 2008, Louisville Metro Police Officer Katie Graham-Matheney ("Graham-Matheney") was dispatched to a home located at 4104 West Muhammad Ali Boulevard in Louisville. A caller to the Louisville MetroSafe tipline had reported two black men selling drugs at the house. According to the caller, one man was wearing a long-sleeved blue shirt and one was wearing a long-sleeved red shirt. Graham-Matheney had responded to several reports of drug activity at the same address in the past, but had not seen any suspects at the house by the time she arrived. Graham-Matheney was also aware that a trespass waiver[1] was on file for the house.

---

[1]A trespass waiver, according to Graham-Matheney, "is filed when the management of a residential location does not want anyone on the property who doesn't live there. These addresses are filed with the Louisville Metro Police Department and officers are instructed to ask anyone encountered at these locations if they live there. If not, they can be arrested and charged with

continue...

When Graham-Matheney arrived at the house, she saw three black men on the front porch. One of them, Renaldo Halsell ("Halsell") was wearing a long-sleeved blue shirt; another, Gregory Gatewood ("Gatewood") was wearing a long-sleeved red shirt. The third man, who is not fully identified in the record, was wearing a white shirt. Graham-Matheney approached the men, told them that a trespass waiver was on file for the house, and asked the men if they lived there and for their identification. The men acknowledged that none of them lived at the house, and provided Graham-Matheney with identification cards.

A short time later, another officer, Jessica Schmuckie, arrived at the home. Graham-Matheney then told the men that she was actually at the house due to a report that someone was selling drugs. Graham-Matheney asked Gatewood for permission to search him. Gatewood assented, and Graham-Matheney searched Gatewood's person, including his pockets, but did not find any drugs.[2] Graham-Matheney then asked Halsell if she could search him. Halsell assented as well, and Graham-Matheney found a small digital scale and plastic baggies in his pockets. She also found a bag of marijuana.[3]

---

[1]...continue
trespass." Graham-Matheney Motion for Summ. J. (DN 40) at 2, n.1.

[2] Graham-Matheney claims that she found several plastic baggies in Gatewood's pockets when she searched him. Graham-Matheney PSU Interview (DN 40-5) at 3. Gatewood, however, says that he does not remember Graham-Matheney finding any baggies. Gatewood Depo. at 55. There is no evidence in the record that any baggies that might have been seized from Gatewood were ever checked in as evidence.

[3] It is unclear where on Halsell's body the marijuana was found. Graham-Matheney told a Louisville Metro Police Department Professional Standards Unit (PSU) investigator that she found the bag on Halsell's ankle. Graham-Matheney PSU Interview (DN 40-5) at 3. However, Officer Jessica Schmuckie, who witnessed the search of Gatewood and Halsell, told a PSU investigator that the bag was found in Halsell's pocket. Schmuckie PSU Interview (DN 40-7) at 3. Gatewood himself testified that the drugs fell out of Halsell's pants leg. Gatewood Depo. (DN 40-9) at 56.

Graham-Matheney decided to arrest Halsell. As she attempted to handcuff him, however, he fled. Graham-Matheney chased him for a short distance, but gave up the chase because her portable radio was not working. She then returned to the house and handcuffed Gatewood. Graham-Matheney walked Gatewood to her patrol car, which was parked in front of the house, removed the handcuffs, and drove Gatewood to his grandmother's house, which was down the street. Graham-Matheney issued a citation charging Gatewood with trafficking in marijuana and possession of a controlled substance. Because Gatewood was a juvenile, Graham-Matheney released him to his grandmother's custody.

Later that day, Schmuckie found the paperwork relating to Gatewood's citation. Schmuckie brought the charges to the attention of her supervisors, stating that she believed they were incorrect because no drugs had been found on Gatewood himself. The next day, Sergeant Michael O'Neil, Graham-Matheney's supervisor, reviewed the charges with Lieutenant Lavita Chavous. Chavous concluded that the charges were incorrect. O'Neil then went to Gatewood's mother's house and informed his mother than the charges would be dropped and that Gatewood did not need to appear in court. Gatewood was never prosecuted and never made a court appearance related to the April 27 incident.

In June 2008, the police department's Professional Standards Unit initiated an investigation into Gatewood's arrest. Graham-Matheney was found to have violated departmental policy in the course of the arrest, and was suspended without pay for 30 days.

On April 23, 2009, Gatewood brought the instant action in this court. He claimed that Graham-Matheney "planted marijuana" on his body, Compl. ¶ 3 and arrested and charged him with trafficking in and possession of marijuana even though she "knew that [Gatewood] had not

committed the aforesaid crimes." *Id. ¶* 6. Gatewood claimed that these actions, carried out under color of state law, deprived Gatewood of a number of rights.[4] *Id.* ¶ 8. Gatewood also claimed that Graham-Matheney and O'Neil conspired to "cover up" evidence of his arrest, and in doing so violated Gatewood's rights under the Fourth and Fourteenth Amendments. *Id.* ¶¶ 11–12. Additionally, Gatewood raised state-law claims of outrage, assault and battery, and unlawful imprisonment against both Graham-Matheney and O'Neil. Finally, Gatewood also named the Louisville-Jefferson County Metro Government as a defendant because of the defendants' status as employees of the Louisville Metro Police Department. Graham-Matheney, O'Neil, and the Louisville-Jefferson County Metro Government have moved for summary judgment on Gatewood's claims.

## ANALYSIS

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is "sufficient evidence on which the jury could reasonably find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). The evidence presented must be construed in

---

[4]Specifically, Gatewood claims the arrest deprived him of his rights to freedom from illegal search and seizure, freedom from illegal detention, freedom from humiliation and intimidation, the enjoyment of life, liberty and property and freedom from its deprivation without due process of the law, equal protection of the law, and freedom from invasion of privacy. Compl. ¶ 8.

the light most favorable to the non-moving party. *Blakeman v. Mead Containers*, 779 F.2d 1146, 1150 (6th Cir. 1985).

**I. Graham-Matheney's Motion for Summary Judgment on Gatewood's § 1983 Claims**

To prevail in an action brought pursuant to 42 U.S.C. § 1983,[5] a plaintiff must prove that he or she was deprived of a right secured by the United States Constitution or federal law, and that such deprivation occurred under color of state law. *Flagg Bros., Inc.v. Brooks*, 436 U.S. 149, 155–56 (1978). Moreover, in order for his § 1983 claims in this action to survive summary judgment, Gatewood must overcome Graham-Matheney's defense of qualified immunity. Qualified immunity "shields government officials from personal liability 'for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (quoting *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006)). When a qualified immunity defense is raised, the plaintiff has the burden of demonstrating that the defendant is not entitled to it. *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006).

**A. Gatewood's Arrest**

"In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause" to make the arrest, *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). An officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge are "sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit a crime.'" *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Generally, "the existence of probable

---

[5]Gatewood does not specifically cite 42 U.S.C. § 1983 in his complaint, but references it frequently in his responses to the defendants' motions for summary judgment.

cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). However, "an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). Thus, in order to determine whether to grant summary judgment for Graham-Matheney on grounds of qualified immunity, we must determine whether she could have reasonably (if erroneously) believed, based on the facts within her knowledge, that Gatewood had committed, was committing, or was about to commit a crime.

Graham-Matheney arrested Gatewood for violations of KRS § 218A.1422 (possession of marijuana) and KRS § 218A.1421 (trafficking in marijuana). KRS § 218A.1422 provides that "[a] person is guilty of possession of marijuana when he knowingly and unlawfully possesses marijuana." "Possession" for purposes of this statute includes both actual and constructive possession. *See Rupard v. Commonwealth*, 475 S.W.2d 473, 475 (Ky. 1971). An individual has constructive possession of an item if it is "subject to his dominion or control." *Id.* KRS § 218A.1421 provides that "[a] person is guilty of trafficking in marijuana when he knowingly and unlawfully traffics in marijuana."

When Graham-Matheney arrested Gatewood, it is undisputed that she knew the following: (1) Gatewood and Halsell matched the description of the men who had been reported as selling drugs at the house; (2) Gatewood had been found in the company of an individual in possession of marijuana, baggies, and a scale, although no drugs were found on Gatewood

cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). However, "an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). Thus, in order to determine whether to grant summary judgment for Graham-Matheney on grounds of qualified immunity, we must determine whether she could have reasonably (if erroneously) believed, based on the facts within her knowledge, that Gatewood had committed, was committing, or was about to commit a crime.

Graham-Matheney arrested Gatewood for violations of KRS § 218A.1422 (possession of marijuana) and KRS § 218A.1421 (trafficking in marijuana). KRS § 218A.1422 provides that "[a] person is guilty of possession of marijuana when he knowingly and unlawfully possesses marijuana." "Possession" for purposes of this statute includes both actual and constructive possession. *See Rupard v. Commonwealth*, 475 S.W.2d 473, 475 (Ky. 1971). An individual has constructive possession of an item if it is "subject to his dominion or control." *Id.* KRS § 218A.1421 provides that "[a] person is guilty of trafficking in marijuana when he knowingly and unlawfully traffics in marijuana."

When Graham-Matheney arrested Gatewood, it is undisputed that she knew the following: (1) Gatewood and Halsell matched the description of the men who had been reported as selling drugs at the house; (2) Gatewood had been found in the company of an individual in possession of marijuana, baggies, and a scale, although no drugs were found on Gatewood

cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). However, "an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). Thus, in order to determine whether to grant summary judgment for Graham-Matheney on grounds of qualified immunity, we must determine whether she could have reasonably (if erroneously) believed, based on the facts within her knowledge, that Gatewood had committed, was committing, or was about to commit a crime.

Graham-Matheney arrested Gatewood for violations of KRS § 218A.1422 (possession of marijuana) and KRS § 218A.1421 (trafficking in marijuana). KRS § 218A.1422 provides that "[a] person is guilty of possession of marijuana when he knowingly and unlawfully possesses marijuana." "Possession" for purposes of this statute includes both actual and constructive possession. *See Rupard v. Commonwealth*, 475 S.W.2d 473, 475 (Ky. 1971). An individual has constructive possession of an item if it is "subject to his dominion or control." *Id.* KRS § 218A.1421 provides that "[a] person is guilty of trafficking in marijuana when he knowingly and unlawfully traffics in marijuana."

When Graham-Matheney arrested Gatewood, it is undisputed that she knew the following: (1) Gatewood and Halsell matched the description of the men who had been reported as selling drugs at the house; (2) Gatewood had been found in the company of an individual in possession of marijuana, baggies, and a scale, although no drugs were found on Gatewood

himself; (3) Graham-Matheney had previously responded to calls about drug activity at the house; and (4) a trespass waiver was on file for the house.[6]

Based on these facts alone, Graham-Matheney could not have reasonably concluded that Gatewood had violated or was about to violate the possession and trafficking statutes. Gatewood himself did not have physical possession of any marijuana, and there is little evidence, beyond Gatewood's proximity to Halsell, that Gatewood had constructive possession of the drugs. Proximity alone is not sufficient to support a finding of probable cause to arrest. *See United States v. Di Re*, 332 U.S. 581, 593–94 (1948). Moreover, there is little evidence to support a conclusion that Gatewood was engaged in selling drugs. The only evidence Graham-Matheney had to support a belief that Gatewood was trafficking consisted of the anonymous phone call to the MetroSafe tipline and the fact that drug activity had been reported at the house on previous occasions. These facts, without more, would not have provided probable cause to arrest Gatewood for violation of the trafficking statute.[7]

Graham-Matheney argues that even if she did not have probable cause to arrest Gatewood for possession and trafficking, she nonetheless could have arrested him for conspiracy to commit those offenses. Under Kentucky law, the crime of conspiracy requires that an individual "[agree] with one (1) or more persons that at least one (1) of them will engage in

---

[6]As noted above, Graham-Matheney may also have discovered plastic bags on Gatewood when she arrested him. This fact, however, is disputed, so we will not consider it as having been within Graham-Matheney's knowledge for purposes of summary judgment.

[7]If, as Graham-Matheney asserts, Gatewood had possession of baggies of the same type found in Halsell's pockets, this might tip the scales in favor of a finding of probable cause to arrest Gatewood for trafficking or possession, since the discovery of baggies would provide a strong link between Gatewood and Halsell's alleged criminal activities. However, this is a question of fact that may not be resolved on summary judgment.

conduct constituting that crime or an attempt or solicitation to commit such a crime," KY. REV. STAT. § 506.040(1)(a), or that an individual "[agree] to aid one or more persons in the planning or commission of that crime or an attempt or solicitation to commit such a crime." *Id.* § 506.040(1)(b). Conspiracy "may be established by acts, conduct, or declarations of those who are participants, but not by suspicion or by the mere association of parties." *Sexton v. Commonwealth*, 90 S.W.2d 999, 1000 (Ky. App. 1936). Here, Graham-Matheney had little basis, beyond Gatewood's apparent association with Halsell and an anonymous tip, to conclude that Gatewood and Halsell had agreed to engage in the possession or sale of marijuana. In fact, she has presented no fact that would support a finding that any agreement existed between Gatewood and Halsell. Graham-Matheney's argument for a conspiracy-based arrest therefore fails.

Finally, Graham-Matheney argues that Gatewood's arrest was proper because she had probable cause to arrest Gatewood for trespassing. This argument fails as well. Although there was a trespass waiver on file for the house and Gatewood did not live there, there is no indication that Graham-Matheney questioned Gatewood as to why he was at the house or whether he had permission to be there.[8] Furthermore, Graham-Matheney arrested Gatewood for marijuana possession and trafficking – not trespassing, and she may not justify the arrest using an "*ex post facto* extrapolation [] of all crimes that might have been charged on a given set of facts." *Williams v. Jaglowski*, 269 F.3d 778, 783 (7th Cir. 2001) (quoting *Richardson v. Bonds*,

---

[8]In fact, there is evidence in the record that Gatewood had permission from one of the occupants of the house to be there. Ericca Collett, a resident of one of the apartments in the house, told a Louisville Metro Police Department PSU investigator that she had asked Gatewood to stay at the house while Collett went to the store. Collett PSU Interview (DN 40-3) at 4. Collett stated that her young son was asleep inside, and she had asked Gatewood to sit outside the house to make sure the child did not wake up while she was gone. *Id.*

860 F.2d 1427, 1431 (7th Cir. 1988)). Summary judgment is therefore inappropriate on this ground as well.

We hold that there is a question of fact as to whether Graham-Matheney could have reasonably believed that Gatewood had committed, was committing, or was about to commit a crime. Her motion for summary judgment on Gatewood's § 1983 claims related to his arrest will therefore be denied.

**B. Alleged "Planting" of Evidence and "Cover Up"**

In addition to his false arrest claims, Gatewood alleges that Graham-Matheney physically "planted" marijuana on his person and conspired with O'Neil and others within the department to destroy evidence of Gatewood's arrest and citation. In support of his evidence planting claims, Gatewood cites the following portion of his deposition:

> Q. Okay. What did she do?
>
> A. She came back and – she came back and she said, "since we can't catch him, somebody's going to take the blame." *And she put the marijuana on me, out of all the people.*
>
> Gatewood Depo. at 60 (emphasis added).

Read in context, it is clear that this statement refers to Graham-Matheney's arrest of and charging of Gatewood for the marijuana rather than the physical "planting" of drugs on Gatewood. Other than this statement, Gatewood has presented no evidence beyond his own allegations that Graham-Matheney physically placed marijuana on his person in the course of the arrest. Indeed, from the evidence in the record, it appears that Graham-Matheney correctly attributed the physical possession of marijuana to Halsell. The evidence report submitted with the marijuana, baggies, and scale seized from Halsell lists the suspect's name as Halsell, not

Gatewood. The Uniform Citation issued to Gatewood also states that the marijuana was found "on another [subject] . . . named Renaldo Halsell." Gatewood's § 1983 claims, to the extent they rest on any alleged "planting" of evidence on Gatewood's person, will be dismissed.

Gatewood claims that "circumstantial evidence" raises a question of fact as to the existence of a conspiracy within the police department to destroy evidence of his citation and arrest and generally "cover up" Graham-Matheney's actions. We need not examine his allegations in detail because, as Graham-Matheney points out, Gatewood has not shown how such a conspiracy, if it existed, would deprive him of a right under the United States Constitution or federal law. Gatewood asserts in his complaint that his conspiracy claims are grounded in the Fourth and Fourteenth Amendments, but it is unclear how either of these amendments would apply to the facts of this case. The destruction of a citation or an alleged "cover up" by the police department would not implicate the search and seizure concerns encompassed by the Fourth Amendment. Nor is it clear how the destruction of evidence of Gatewood's arrest would implicate the due process or equal protection considerations of the Fourteenth Amendment. Gatewood's conspiracy allegations suggest, at best, unsavory behavior on the part of the police department. They do not provide grounds for a Constitutional complaint. Thus, Gatewood's claims, to the extent they are based on an alleged conspiracy to destroy evidence of his arrest,

**II. Graham-Matheney's Motion for Summary Judgment on Gatewood's State Law Claims**

In addition to his § 1983 claims, Gatewood argues that Graham-Matheney committed the state-law torts of intentional infliction of emotional distress, assault and battery, and unlawful imprisonment. As grounds, Gatewood claims

> [Graham-Matheney] unlawfully touched Plaintiff by illegally searching him and placing him under arrest, and falsely charging him with crimes against the

> Commonwealth of Kentucky, knowing the same to be false, and thereby putting Plaintiff in great fear for his safety.

Compl. ¶ 15.

Kentucky law "affords qualified immunity to the discretionary acts of peace officers performed in an official capacity, thereby shielding them 'from [ ] liability for good faith judgment calls made in a legally uncertain environment.'" *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 521–23 (Ky. 2001)). In order to show that the officer does not qualify for the "good faith" exception, "the complainant must demonstrate that the officer 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate' the complainant's rights or that the officers 'took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . .'" *Id.* (quoting *Yanero*, 65 S.W.3d at 523). The qualified immunity analysis under Kentucky law is "essentially identical" to the qualified immunity analysis under federal law. *Jefferson Cnty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004). As explained above, there is a question of fact as to whether Graham-Matheney could reasonably have concluded that Gatewood had committed a crime. She is therefore ineligible for the "good faith" exception as a matter of law.

Fact issues preclude summary judgment on Gatewood's state-law claims for assault, battery, and false imprisonment. Assault "requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001). In this case, a jury could find that, in arresting Gatewood, Graham-Matheney both threatened and engaged in unwanted touching of Gatewood. Although, as Graham-Matheney

points out, Gatewood consented to the search of his person, he did not consent to be handcuffed and placed in a police car. Gatewood's claims for assault and battery may therefore proceed.

Under Kentucky law, false imprisonment is "the deprivation of the liberty of one person by another . . . for however short a time without such person's consent and against his will, whether done by actual violence, threats or otherwise." *Banks*, 39 S.W.3d at 479. The restraint must be "wrongful, improper, or without a claim of reasonable justification, authority or privilege." *Id.* Here, Gatewood was deprived of his liberty against his will when Graham-Matheney arrested him. As previously noted, a jury could find that such arrest was wrongful because it could be concluded that Graham-Matheney lacked probable cause to take Gatewood into custody. Gatewood's claim for false imprisonment may therefore also proceed.

Graham-Matheney is, however, entitled to summary judgment on Gatewood's claim for intentional infliction of emotional distress. Under Kentucky law, this tort is actionable if the plaintiff shows that the defendant's actions were intended "*only* to cause extreme emotional distress in the victim." *Brewer v. Hilliard*, 15 S.W.3d 1, 8 (Ky. App. 1999) (emphasis added). As the Kentucky Court of Appeals has explained:

> [T]he tort of outrage is intended as a "gap-filler", providing redress for extreme emotional distress when common law actions do not. Where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery of emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate common law action.

*Banks*, 39 S.W.3d at 481.

Gatewood has pointed this court to no evidence that would support a finding that Graham-Matheney's actions were intended solely to cause Gatewood extreme emotional distress.

Although Gatewood may have suffered emotional distress incident to the other torts he claims Graham-Matheney committed, the evidence does not support a finding that the only intent of Graham-Matheney's conduct was to cause Gatewood emotional distress. We will therefore grant Graham-Matheney's motion for summary judgment on this claim.

**III. O'Neil's Motion for Summary Judgment**

Gatewood claims that Sergeant Michael O'Neil, Graham-Matheney's supervisor, is liable under § 1983 because O'Neil allegedly participated in the alleged conspiracy to cover up Gatewood's arrest. As explained above, Gatewood's conspiracy allegations, even if true, do not support a § 1983 claim. We will therefore grant O'Neil's motion for summary judgment on Gatewood's federal claim.

Gatewood also claims that O'Neil is liable for his state-law tort claims against Graham-Matheney because O'Neil allegedly assisted in covering up evidence of Gatewood's arrest. However, as O'Neil points out, Gatewood has "failed to identify any act attributable to O'Neil for these alleged torts." O'Neil/Louisville Metro Motion for Summ. J. (DN 39) at 9. Moreover, Gatewood may not assert state-law tort claims against O'Neil based on any theory of vicarious liability. *See Bd. of Trustees of Univ. of Ky. v. Hayse*, 782 S.W.2d 609, 615 (Ky. 1989) (overruled on other grounds by *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001)). Summary judgment in O'Neil's favor is appropriate on Gatewood's state-law claims as well.

**IV. Louisville-Jefferson County Metro Government's Motion for Summary Judgment**

A municipality is not liable under § 1983 for the action of one of its employees unless it can be established that the employee's action was the result of an official municipal policy. *Monell v. New York City Dept. of Social Svcs.*, 436 U.S. 658, 694–95 (1978). "Such a policy

must be shown by a clear and persistent pattern." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005).

Gatewood argues that "a jury could find that it is the unwritten policy or custom of the Louisville-Metro Police Department to protect its officers against the protection of the constitutional rights of the citizens of this community." Pl.'s Resp. to O'Neil/Louisville Metro's Mot. for Summ. J. (DN 44-2) at 6. However, Gatewood has not pointed this court to any specific facts that show the existence of a clear and persistent pattern of constitutional violations. Indeed, Gatewood has not pointed this court to *any* constitutional violations on the part of the police department in this case. Furthermore, Gatewood at best objects to the manner in which the police department handled *his* case. Standing alone, this is not sufficient to establish a pattern of violations on the part of the city government. Louisville-Jefferson County Metro Government's motion for summary judgment on Gatewood's § 1983 claim will therefore be granted.

Gatewood has acknowledged that his state-law claims against Louisville Metro are barred by the doctrine of sovereign immunity. Summary judgment will therefore be granted on this ground as well.

Finally, although neither party has directly addressed the status of the official-capacity claims against Graham-Matheney and O'Neil, we note that official-capacity suits are "no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Because Gatewood has not shown that Louisville Metro is subject to liability under § 1983 or state law, his claims against Graham-Matheney and O'Neil in their official capacities should be dismissed as well.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment by Graham-Matheney, O'Neil, and Louisville-Jefferson County Metro Government will be granted in part and denied in part. A separate order will issue in accordance with this opinion.